UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE LENAY WILLIAMS,

     *Plaintiff*,

*v.*

KILOLO KIJAKAZI,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

     *Defendant*.

_____/

CASE NO. 2:22-cv-11279

HON.  DAVID M. LAWSON
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)

### I.    RECOMMENDATION

Plaintiff challenges the Commissioner of Social Security regarding a final decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  The case was referred to the undersigned for review.  (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B) (2012); E.D. Mich. LR 72.1(b)(3).  For the reasons below, I recommend **DENYING** Plaintiff's motion for summary judgment (ECF No. 10) and **GRANTING** the Commissioner's motion (ECF No. 12).

### II.    REPORT

#### A. Introduction and Procedural History

1

On August 9, 2019, Plaintiff applied for DIB and SSI, alleging disability as of June 10, 2019.[1]   (ECF No. 8-5, PageID.342, 349).   Her application for benefits claims disability due to diabetes, arthritis, and chronic anemia (ECF No. 8-6, PageID.372).

Following the initial denial of the claim, Plaintiff requested a hearing, held by telephone April 5, 2021 before Administrative Law Judge ("ALJ") ALJ Colleen Mamelka.  (ECF No 8-2, PageID.84, 86).  On April 21, 2021, ALJ Mamelka determined that Plaintiff was not disabled.  (*Id*. at PageID.67-77).  On April 14, 2022, the Appeals Council denied review of the ALJ's determination.  (*Id*. at PageID.28-30).   Plaintiff filed the present action on June 6, 2022.

**B. Standard of Review**

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g) (2018).  The District Court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 506 (6th Cir. 2014) (internal quotation marks

---

[1] While the application for DIB states an onset of disability date of July 1, 2019, the application for SSI alleges disability as of June 10 of the same year. ECF 8-5, PageID.342, 349).  The administrative determination identifies the alleged onset date as June 10, 2022.  (ECF No. 8-2, PageID.67).

omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means - and means only - 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286 (internal citations omitted).

## C. Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months."  42 U.S.C. § 1382c(a)(3)(A) (2012). The Commissioner's regulations provide that disability is determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2021); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "Through step four, the claimant bears the burden of proving the existence and severity of

limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2021).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g) (2021)).

**D. The ALJ's Findings**

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date of June 10, 2019. (ECF No. 8-2, PageID.69). At Step Two, the ALJ found the following impairments severe: "diabetes mellitus . . . with hyperglycemia and retinopathy; gastroparesis; anemia; osteoarthritis . . . sacroiliac joint

5

dysfunction; anxiety; and depression" (*Id.*).  She found that following conditions did not meet the 12-month durational requirement or were non-severe: back pain with sciatica, headaches, hypertension, hyperlipidemia, a leg lipoma, sleep apnea, metabolic syndrome, renal stones, and "abnormal uterine bleeding." (*Id.* at PageID.70).

The ALJ determined that Plaintiff experienced "mild" psychological limitation in understanding remembering or applying information and "moderate" limitation in interacting with others; concentration, persistence, or pace; and adapting and managing herself. (*Id.* at PageID.72).  At Step Three, she found that none of the impairments met or medically equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PageID.70).

The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:[2]

> [S]he is able to frequently balance and stand/walk up to four
> hours in an 8-hour workday. She can occasionally climb

---

[2] Under 20 C.F.R. §§ 404.1567(a-e), 416.967(a-e) *sedentary* work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and exertionally *heavy* work as "involv[ing] lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than

ramps/stairs, stoop, kneel, crouch and crawl. She is unable to climb . . . ladders, ropes, or scaffold and should not be exposed to unprotected heights, dangerous moving machinery, or vibration. Work is limited to simple routine tasks involving occasional simple work-related decisions and routine workplace changes and occasional interaction with the general public.

(*Id*. at PageID.73).

At Step Four, the ALJ found that Plaintiff was unable to perform her past relevant work as a home attendant, child monitor, or cosmetologist (*Id*. at PageID.75-76). At Step Five, the ALJ cited the VE's testimony in support of her determination that Plaintiff could perform a significant number of jobs in the national economy including the exertionally light, unskilled work as a router, inspector/hand packager, and a collator/operator. (*Id*. PageID.76, 120-21). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id*. at PageID.50).

### E. Administrative Record

#### 1. The Medical Evidence

July 2018 records note "a past medical history of . . . migraines." (ECF No. 8-7, PageID.515). In February 2019, Plaintiff was prescribed Fioricet for "headache syndrome." (*Id*. at PageID.510). May 2019 emergency room records by Rebecca A. Hess, M.D. note Plaintiff's insulin-dependent diabetes

---

100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.

and anemia. (*Id*. at PageID.481). Plaintiff reported abdominal pain, nausea, vomiting, and diarrhea with an otherwise unremarkable physical examination. (*Id*.) She was prescribed medication for nausea and vomiting. (*Id*. at PageID.485). Follow-up records from the same month note Plaintiff's report of anxiety. (*Id*. at PageID.505). She denied ongoing gastrointestinal problems. (*Id*.) A June 2019 "problem list" did not include headaches. (*Id*. at PageID.755). Her medication list included Fioricet "as needed" for headaches. (*Id*. at PageID.757). In August 2019, she reported lower back pain. (*Id*. at PageID.497). Imaging studies showed mild degenerative changes. (*Id*. at PageID.499). Migraine headaches were listed among Plaintiff's current conditions. (*Id*. at PageID.498-99). Plaintiff exhibited full motor strength in all extremities and a normal gait. (*Id*. at PageID.500). She was diagnosed with sacroiliac joint arthritis. (*Id*.). Steroid injections were recommended. (*Id*.) She denied gastrointestinal problems. (*Id*. at PageID.501). She demonstrated a normal mood and affect. (*Id*.) September 2019 emergency room records note a diagnosis of gastritis. (*Id*. at PageID.1084).

In March 2020, Matthew Rushlau, Ed.D. reviewed the treating and consultative records, finding that because of anxiety and obsessive-compulsive disorders, Plaintiff experienced mild limitation in the ability to understand, remember, or apply information and moderate limitation in the

8

ability to interact with others; to concentrate, persist, or maintain pace; and to adapt or manage herself.  (ECF No. 8-3, PageID.163).

The same month, Saadat Abbasi, M.D. performed a non-examining review of the treating and consultative records pertaining to Plaintiff's physical health, finding that she could lift 10 pounds frequently and 20 pounds occasionally; stand or walk for four hours in an eight-hour workday, and sit for six.  (*Id*. at PageID.165).  He found an unlimited ability to push or pull.  (*Id*.)  He precluded the use of ladders, ropes, and scaffolds but found that Plaintiff could perform otherwise occasional postural activity. (*Id*. at PageID.166).  He found that she should avoid concentrated exposure to temperature extremes, humidity, vibration, and hazards.  (*Id*. at PageID.167).

In September 2020, Kimerly L. Lem, Ph.D., practicing under the supervision of psychologist William D. Brooks, Ed.D., performed a consultative psychological evaluation on behalf of the SSA, noting Plaintiff's report of depression resulting from physical limitations due to diabetes, arthritis, and anemia.  (ECF No. 8-7, PageID.965).  Plaintiff reported panic attacks several times a week.  (*Id*.)  She reported that she felt best around her children and grandchildren but her husband, who was incarcerated, was "not supportive or emotionally available . . ."  (*Id*. at PageID.966).

Dr. Lem noted good eye contact and a cooperative manner.  (*Id*.)  Plaintiff reported that she spent a typical day watching television and

performing light chores. (*Id*. at PageID.967). Dr. Lem observed that Plaintiff "did seem to possibly exaggerate her symptoms." (*Id*.). Dr. Lem noted that Plaintiff "walked quickly and with a steady gait" including stair climbing. (*Id*.) Dr. Lem concluded that Plaintiff had "mild to moderate" symptoms of anxiety but a normal mood. (*Id*. at PageID.970). She found that Plaintiff "appeared capable of understanding, remembering, and applying information but . . . did not appear motivated to apply information." (*Id*.) She noted good social skills and a good concentration/attention span. (*Id*.)

Plaintiff reported headaches in March and May 2020. (*Id*. at PageID.950, 1182). In November 2020, Plaintiff denied headaches. (*Id*. at PageID.1158). In January 2021, Plaintiff sought emergency treatment for abdominal pain. (*Id*. at PageID.1135). She was diagnosed with diabetic gastroparesis and advised to follow up with a gastroenterologist. (*Id*. at PageID.1154). The following month, she sought emergency treatment for chest pains. (*Id*. at PageID.1191). Cardiac testing was uniformly negative. (*Id*.). Treatment notes state that she was "not anxious." (*Id*.)

### 2. Plaintiff's Testimony

Plaintiff offered the following testimony: Plaintiff, 44, stood 5' 11" weighed 250 pounds. (*Id*. at PageID.89). She left school after 11th grade. (*Id*.). She could drive up to 20 minutes at a time. (*Id*.) She lived with her adult daughter. (*Id*. at PageID.90). Apart from a two-week stint as nursing

assistant, Plaintiff had not worked since her alleged onset of disability. (*Id*.). She quit after being asked to perform laundry chores that were "too much" for her to handle. (*Id*. at PageID.91). The jobs predating the alleged June 2019 disability required her to lift as much as 200 pounds. (*Id*. at PageID.92-94).

Plaintiff's disability was chiefly attributable to headaches and back pain. (*Id*. at PageID.96). She experienced severe headaches on a daily basis but obtained good results from prescribed medication. (*Id*. at PageID.102-03). She monitored her blood sugar levels frequently. (*Id*. at PageID.96). She denied medication side effects from medication prescribed for diabetes. (*Id*.) She experienced periodic blurred vision due to diabetes. (*Id*. at PageID.97). A digestive condition causing nausea and vomiting improved with the use of medication. (*Id*.) She took iron supplements for anemia. (*Id*. at PageID.98). Due to anemia caused by severe menstrual bleeding, she had received multiple transfusions since June 2019. (*Id*.). She experienced nighttime sleep disturbances but napped for approximately one hour every day. (*Id*.) A planned hysterectomy was canceled because obesity and diabetes increased the risk of surgical complications. (*Id*. at PageID.99). She took Tylenol for moderate knee pain. (*Id*.) She experienced long-term relief from hip pain with steroid injections. (*Id*. at PageID.100). She took pain medication for severe, radiating lower back pain. (*Id*.) Her most comfortable position was in a reclining chair with her feet up. (*Id*. at PageID.101). She spent

approximately two hours each day in a reclining chair. (*Id*.)

Plaintiff was unable to walk for more than a minute without becoming tired. (*Id*. at PageID.103). She could sit in one position for up to 20 minutes but was limited to standing shorter periods. (*Id*. at PageID.104). She could lift as many as two grocery bags at one time but was unable to bend or squat. (*Id*.) She was unable to perform household chores for more than five minutes at a time. (*Id*.) She did not take psychotropic medication and had not been hospitalized for mental health problems. (*Id*. at PageID.105). She did not experience any medication side effects but otherwise experienced short-term memory loss and confusion. (*Id*. at PageID.106). She was able to leave the house to socialize. (*Id*.)

In response to questioning by her attorney, Plaintiff reported that she weighed 250 pounds. (*Id*. at PageID.107). She acknowledged that she was currently taking at least one psychotropic medication. (*Id*.) She used an albuterol inhaler three times each day. (*Id*.) She experienced daily depression as a result of her physical problems. (*Id*. at PageID.111). Her social interaction was limited to interacting with her children, grandchildren, and mother. (*Id*.) She experienced anxiety in crowds of more than six people. (*Id*. at PageID.112).

### 3. The Vocational Expert's Testimony

The VE classified Plaintiff's past relevant work as a fast-food worker as unskilled and exertionally light; home attendant, semiskilled/medium (heavy as performed); child monitor, semiskilled/medium (sedentary to light as performed); and cosmetologist, skilled/light (sedentary to light as performed). (*Id*. at PageID.118).

The ALJ then posed the following set of modifiers to the VE, describing a hypothetical individual of Plaintiff's age, education, and work history:

> Assume this individual is capable of light exertion, but with the following limitations. There would be frequent balance; standing and walking up to four hours in an eight-hour workday; occasional climb ramps and stairs; occasional stoop, kneel, crouch, crawl. There'd be no ladders, ropes, or scaffolding, unprotected heights. No dangerous, moving machinery and no vibration. Work is limited to simple routine tasks defined as unskilled, SVP 1 or 2 involving occasional simple, work-related decisions and routine, workplace changes. There would also be occasional interaction with the general public. Would past work be available?

(*Id*. at PageID.119). The VE testified that the above limitation would preclude Plaintiff's past relevant work but would allow for the unskilled, light work of a router, Dictionary of Occupational Titles ("DOT") code 222.587-038 (approximately 88,000 positions in the national economy); inspector (hand packager), DOT code 559.687-074 (20,000); and collator/operator, DOT code 208.685-010 (28,000). (*Id*. at PageID.120-21). The VE testified that the need for more than one absence a month would preclude competitive employment. (*Id*. at PageID.121). In response to questioning by Plaintiff's attorney, she

stated that the need to be off task more than 15 percent of the workday would be work preclusive. (*Id*. at PageID.122). The VE stated that her testimony was based on the information found in the DOT, except for her testimony as to the four-hour walking limitation, for which she relied on the Occupational Requirement Survey and her own "professional experience." (*Id*. at PageID.119-120).

## F. Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B) (2012). The newly promulgated regulations, applicable to applications for disability benefits filed on or after the effective date of March 27, 2017, such as Plaintiff's application here, distinguish between acceptable medical sources, medical sources, and nonmedical sources. An acceptable medical source means a medical source who is a:

(1)   Licensed physician (medical or osteopathic doctor);

(2)   Licensed Psychologist, which includes:

    (i)   A licensed or certified psychologist at the independent practice level; or

    (ii)   A licensed or certified school psychologist, or other licensed or certified individual with another title who performs the same function as a school psychologist in a school setting, for impairments of intellectual disability, learning disabilities, and borderline intellectual functioning only;

(3)    Licensed optometrist for impairments of visual disorders, or measurement of visual acuity and visual fields only, depending on the scope of practice in the State in which the optometrist practices;

(4)    Licensed podiatrist for impairments of the foot, or foot and ankle only, depending on whether the State in which the podiatrist practices permits the practice of podiatry on the foot only, or on the foot and ankle;

(5)    Qualified speech-language pathologist for speech or language impairments only. For this source, qualified means that the speech-language pathologist must be licensed by the State professional licensing agency, or be fully certified by the State education agency in the State in which he or she practices, or hold a Certificate of Clinical Competence in Speech-Language pathology from the American Speech-Language-Hearing Association;

(6)    Licensed audiologist for impairments of hearing loss, auditory processing disorders, and balance disorders within the licensed scope of practice only [];

(7)    Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice []; or

(8)    Licensed Physician Assistant for impairments within his or her licensed scope of practice [].

20 C.F.R. §§ 404.1502(a), 416.902(a). (2021).

A medical source is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State or Federal law, or an individual who is certified by a State as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." *Id.* §§ 404.1502(d),

15

416.902(a). In contrast, a nonmedical source means "a source of evidence who is not a medical source." *Id.* §§ 404.1502(e), 416.902. "This includes, but is not limited to: (1) [the claimant]; (2) Educational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers); (3) Public and private social welfare agency personnel; and (4) Family members, caregivers, friends, neighbors, employers, and clergy." *Id.*

The SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." *Id.* §§ 404.1520c(a), 416.920(a). "The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id.* The SSA will consider several factors when it contemplates "the medical opinion(s) and prior administrative medical findings" in a case. *Id.*

Of these factors, the first is "supportability." This factor considers that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.*

16

§§ 404.1520c(c)(1), 416.920c(c)(1).

The SSA will also consider the "consistency" of the claim. This includes the consideration that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be[.]" *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

In addition, the SSA will consider the "[r]elationship with claimant[.]" *Id*. §§ 404.1520c(c)(3), 416.920c(c)(3). This factor will include the analysis of:

    (i)    Length of the treatment relationship. The length of time a medical source has treated you may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

    (ii)    Frequency of examinations. The frequency of your visits with the medical source may help demonstrate whether the medical source has a longitudinal understanding of your impairment(s);

    (iii)    Purpose of the treatment relationship. The purpose for treatment you received from the medical source may help demonstrate the level of knowledge the medical source has of your impairment(s);

    (iv)    Extent of the treatment relationship. The kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories may help demonstrate the level of knowledge the medical source has of your impairment(s);

    (v)    Examining relationship. A medical source may have a

17

> better understanding of your impairment(s) if he or she
> examines you than if the medical source only reviews
> evidence in your folder[.]

*Id.* The fourth factor of the SSA's analysis is "specialization." In making this

determination, the SSA will consider "[t]he medical opinion or prior

administrative medical finding of a medical source who has received

advanced education and training to become a specialist may be more

persuasive about medical issues related to his or her area of specialty than the

medical opinion or prior administrative medical finding of a medical source

who is not a specialist in the relevant area of specialty." *Id.* §§

404.1520c(c)(4), 416.920c(c)(4).

Finally, the SSA will consider "other factors." These may include any

other factors that "tend to support or contradict a medical opinion or prior

administrative medical finding." *Id.* §§ 404.1520c(c)(5), 416.920c(c)(5).

"This includes, but is not limited to, evidence showing a medical source has

familiarity with the other evidence in the claim or an understanding of our

disability program's policies and evidentiary requirements." *Id.* Further,

when the SSA considers "a medical source's familiarity with the other

evidence in a claim, we will also consider whether new evidence we receive

after the medical evidence source made his or her medical opinion or prior

administrative medical finding makes the medical opinion or prior

administrative medical finding more or less persuasive." *Id.*

18

As to the duty to articulate how persuasive the medical opinions and prior administrative medical findings are considered, the new regulations provide "articulation requirements."  The ALJ will consider "source-level articulation."  Pursuant to this requirement, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions and prior administrative medical findings in [each] case record."  *Id.*  §§ 404.1520c(b)(1), 416.920c(b)(1).  "Instead, when a medical source provides multiple medical opinion(s) or prior administrative finding(s), [the ALJ] will articulate how [he or she] considered the medical opinions or prior administrative findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of [these sections], as appropriate."  *Id.*  The regulations reiterate that the ALJ is "not required to articulate how [he or she] considered each medical opinion or prior administrative finding from one medical source individually."  *Id.*

The regulations stress that the "factors of supportability (paragraph (c)(1) of these sections) and consistency (paragraph (c)(2) of these sections) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be."  *Id.*  §§ 404.1520c(b)(2),

19

416.920c(b)(2). As such, the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." *Id.*

When medical opinions or prior administrative findings are "equally persuasive," "well-supported" and "consistent with the record" "about the same issue," "but are not exactly the same, [the ALJ] will articulate how [he or she] considered the other most persuasive factors[] for those medical opinions or prior administrative medical findings in [the claimant's] determination or decision." *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3)

The regulations clarify that the SSA is "not required to articulate how we considered evidence from non-medical sources using the requirements of paragraphs (a) through (c) of this section." *Id.* §§ 404.1520c(d), 416.920c(d). In addition, the regulations expressly state that the SSA will not consider "evidence that is inherently neither valuable nor persuasive" and "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c" or 416.920c. *Id.* §§ 404.1520b(c), 416.920b(c). The regulations categorize evidence that is

20

inherently neither valuable nor persuasive as: "[d]ecisions by other governmental and nongovernmental entities;" "[d]isability examiner findings," meaning, "[f]indings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate issue about whether you are disabled;" and "[s]tatements on issues reserved to the Commissioner[;]" these statements include:

(i)     Statements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work;

(ii)    Statements about whether or not your impairment(s) meets or medically equals any listing in the Listing of Impairments[];

(iii)   Statements about what your residual functional capacity is using our programmatic terms about the functional exertional levels [] instead of descriptions about your functional abilities and limitations[];

(iv)    Statements about whether or not your residual functional capacity prevents you from doing past relevant work[];

(v)     Statements that you do or do not meet the requirements of a medical-vocational rule[]; and

(vi)    Statements about whether or not your disability continues or ends when we conduct a continuing disability review[.]

*Id.* §§ 404.1520b(c), 416.920b(c).

The regulations also provide that "[b]ecause a decision by any other governmental and nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind

21

under our rules." *Id.* §§ 404.1504, 416.904.   Therefore, the Commissioner "will not provide any analysis in our determination or decision about a decision made by any other governmental or nongovernmental entity about whether you are disabled, blind, employable, or entitled to benefits." *Id.*   The Commissioner will, however, "consider all of the supporting evidence underlying the other governmental or nongovernmental entity's decision that we receive as evidence in your claim[.]" *Id.*

The regulations clarify that "[o]bjective medical evidence means signs, laboratory findings, or both." *Id.* §§ 404.1502(f), 416.902(f).   Signs are defined as "one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms)." *Id.*   Further, "[s]igns must be shown by medically acceptable clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* §§ 404.1502(g), 416.902(g). Laboratory findings "means one or more anatomical, physiological, or psychological phenomena that can be shown by the use of medically acceptable laboratory diagnostic techniques[,]" and "diagnostic techniques include chemical tests (such as blood tests), electrophysiological studies (such

22

as electrocardiograms and electroencephalograms), medical imaging (such as x-rays), and psychological tests." *Id.*; §§ 404.1502(c), 416.902(c).

The most recent amendments to the regulations also tweaked the manner in which the SSA evaluates symptoms, including pain. "In considering whether you are disabled, we will consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work[.]" *Id.* §§ 404.1529(a), 416.929(a).

But the SSA clarified that "however, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence about your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." *Id.* §§ 404.1529(a), 416.929(a).

Further, "[i]n evaluating the intensity and persistence of your

23

symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you." *Id*. The SSA clarified that it will "then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work." *Id.*

Finally, the SSA notes that "[b]ecause symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms." *Id.* §§ 404.1529(c)(3), 416.929(c).  This other information may include "[t]he information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living)," which "is also an important indicator of the intensity and persistence of your symptoms." *Id.* "Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into

24

account . . . .   We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons[.]" *Id.*   The regulations establish that "[f]actors relevant to your symptoms, such as pain, which we will consider include []:

(i)     [D]aily activities;

(ii)    The location, duration, frequency, and intensity of . . . pain;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

(v)     Treatment, other than medication, . . . received for relief of . . . pain;

(vi)    Any measures . . . used to relieve . . . pain.

*Id.*

The new regulations also impose a duty on the claimant: "In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work."   *Id.* §§ 404.1530(a), 416.930(a).   Stated differently, "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."   *Id.*

25

§§ 404.1530(b), 416.930(a).   Acceptable (or "good") reasons for failure to follow prescribed treatment include:

(1)   The specific medical treatment is contrary to the established teaching and tenets of your religion;

(2)   The prescribed treatment would be cataract surgery for one eye, when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment;

(3)   Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment;

(4)   The treatment because of its magnitude (e.g. open heart surgery), unusual nature (e.g., organ transplant), or other reason is very risky for you; or

(5)   The treatment involves amputation of an extremity, or major part of an extremity.

*Id.* §§ 404.1530(c), 416.930(c).

## G. Arguments and Analysis

As best as can be discerned, Plaintiff makes three main arguments for remand.[3] (ECF No. 10).

### 1. Four Hours Standing and Walking

Plaintiff contends that the finding that she could perform exertionally light work, generally requiring walking and standing for six hours a day, is

---

[3] As discussed below, Plaintiff's additional argument that the ALJ incorrectly concluded that the headaches did not last for 12 months is based on a misreading of the administrative decision.

26

inconsistent with the RFC restricting her to standing or walking four hours a day. (ECF No. 10, PageID.1223). In turn, the Commissioner acknowledges that the four-hour stand/walk limitation narrows the range of available light work but nonetheless allows for a significant number of positions. (ECF No. 12, PageID.1248).

> Under SSR 83-10,
>
> The regulations [20 C.F.R. § 404.1567(b) and § 416.967(b)] define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

1983 WL 31251, at *5 (1983). "To be considered capable of performing a full or wide range of light work, [the individual] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

The RFC limiting Plaintiff to four hours of standing or walking does not prevent her from performing a reduced but significant range of light work. (ECF No. 8-2, PageID.73). Plaintiff's ability to stand or walk for four hours a day falls between the requirements for the full range of light work and the

sedentary requirement of only two hours of walking/standing.  SSR 83-10 at

*5.  "Where an individual's exertional RFC does not coincide with the

definition of any one of the ranges of work . . . . [t]he adjudicator will consider

the extent of any erosion of the occupational base and access its significance."

SSR 83-12, 1983 WL 31253, at *2 (January 1, 1983).  "Where the extent of

erosion of the occupational base is not clear, the adjudicator will need to

consult a vocational resource."  *Id.*

The ALJ did exactly that by asking the VE if the modifier of work

limited to "standing and walking up to four hours in an eight-hour workday"

would allow for a significant number of light positions in the national

economy.  (ECF No. 8-2, PageID.119).  In response, the VE testified that

those limitations would allow for a total of at least 136,000 light, unskilled

positions.[4]  (*Id*. at PageID.120-22).  This is indisputably a significant number

of jobs.  *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022)

("ALJ's finding here that 32,000 suitable jobs exist across the nation fits

comfortably within what this court and others have deemed 'significant.'")

(internal citations omitted).

---

[4]The VE testified that while the DOT did not address "standing and walking
for four hours," her job findings were based on her "profession experience"
and the "Occupational Requirement Survey." (ECF No. 8-2, PageID.120-21).
In any case, Plaintiff does not challenge the VE's credentials or sources, either
here or at the administrative hearing.

Plaintiff's claim that her limitation to four hours of walking/standing precludes light work has been rejected by the Sixth Circuit and courts in this district.  In *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018), the Court rejected the claimant's contention that her inability to stand or sit more than four hours a day precluded light work where the vocational expert found a significant number of jobs in that exertional range: "Blackburn mixes the minimum requirements needed to perform *all* light work with the ability to do *some* light work." *Id.* (emphasis in original).  "Because she can work on her feet for four hours a day, [she] falls in the middle between the requirements for *all* sedentary work (two hours) and *all* light work (six hours).  That is just what vocational experts are for." (emphasis in original). *See also James v. Comm'r of Soc. Sec.,* No. CV 21-10006, 2022 WL 5082234, at *7 (E.D. Mich. Aug. 15, 2022) (Grand, M.J.) (same), report and recommendation adopted, No. 21-10006, 2022 WL 4009178 (E.D. Mich. Sept. 2, 2022); *Piehl v. Comm'r of Soc. Sec.*, No. 21-11066, 2022 WL 1731438, at *3–4 (E.D. Mich. May 4, 2022) (Stafford, M.J.) (collecting cases) ("[C]ase law in this circuit does not support Piehl's contention that a four-hour limitation on walking or standing conflicts with limited light work."), *report and recommendation adopted,* No. 21-11066, 2022 WL 1721446 (E.D. Mich. May 27, 2022).  Accordingly, Plaintiff's argument that a limitation to four hours of walking/standing is inconsistent with the

requirements of light work does not warrant a remand.

## 2. The Evaluation of the Subjective Complaints

Plaintiff also argues that the ALJ improperly discounted her allegations of limitation. (ECF No. 10, PageID.1228). She cites *Calhoun v. Comm'r of Soc. Sec.,* 338 F. Supp. 2d 765 (E.D. Mich. 2004), in support of her contention that the erroneous rejection of her subjective claims mandates remand. (*Id.*) The Commissioner argues that the ALJ provided a sufficient rationale for rejecting Plaintiff's professed degree of limitation due to headaches, back pain, and anemia. (ECF No. 12, PageID.1239).

In *Calhoun*, the Court determined that the ALJ's rejection of the claimant's allegations of limitation was based on his erroneous factual findings. While he found that the claimant could perform daily activities and make shopping trips, the claimant reported only that could "'wash a plate;'" and had her daughter or sister shop for her. *Id.* at 338 F. Supp. 2d at 773-774. The court also noted that the ALJ's conclusion that the treating physician did not find diabetes and hypertension "poorly controlled" contradicted the treating records stating the precisely the opposite. *Id.* at 774. Likewise, the ALJ's finding that the claimant did not experience side effects was contradicted by her testimony of the side effects of sleepiness and hair loss. *Id.*

In contrast here, the ALJ provided an accurate summary of the

allegations of limitation and her reasons for accepting only a portion of them. The ALJ acknowledged Plaintiff's report of headaches, blurry vision, anemia, and nausea. (ECF No. 8-2, PageID.73). She cited Plaintiff's testimony regarding her walking and standing limitations. (*Id*.) The ALJ discussed the medical records both supporting and detracting from Plaintiff's allegations. Contrary to Plaintiff's claim of disabling limitation, the ALJ cited 2019 treating records showing no limitations resulting from diabetes. (*Id*. at PageID.74). She cited imaging studies showing only mild osteoarthritis. (*Id*.) She adopted Dr. Abbasi's non-examining finding that Plaintiff could stand/walk for four hours in an eight-hour workday. ECF No. 8-3, PageID.165). My own review of the record, including multiple observations of an unremarkable appearance with normal gait and muscle strength, also support the ALJ's rejection of the claims of greater limitation. (ECF No. 8-7, PageID.500, 967). While Plaintiff makes a one-sentence argument that the ALJ did not consider her medication side effects as required by 20 C.F.R. §§ 404.1529(c)(3)(iv), Plaintiff twice denied medication side effects at her April 2021 hearing. (ECF No. 10, PageID.1229) (ECF No. 8-2, PageID.96, 106).

Because the ALJ's rejection of Plaintiff's professed degree of limitation is well supported and explained, it is entitled to the deference of this Court. *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (An ALJ's evaluation of the subjective symptoms is entitled to "great

weight"); *see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)) (ALJ's evaluation of the professed limitations must stand unless 'patently wrong in view of the cold record'").

### 3. The Step Two Findings and RFC

Plaintiff contends additionally that the RFC did not reflect impairments found to be either severe or non-severe at Step Two of the sequential analysis. (ECF No. 10, PageID.1226).  She also faults the ALJ for finding that the headaches and back pain were non-severe.  (ECF No. 8-2, PageID.70).  The Commissioner disputes that the severe and non-severe impairments, considered together, direct a disability finding, arguing instead that substantial evidence supports the RFC crafted by the ALJ.  (ECF No. 12, PageID.1239-42).

At step two, the ALJ found the following impairments severe: "diabetes mellitus . . . with hyperglycemia and retinopathy; gastroparesis; anemia; osteoarthritis . . . sacroiliac joint dysfunction; anxiety; and depression" (ECF No. 8-2, PageID.69).  She found that the following conditions were non-severe or did not meet the "minimal duration of 12 months or a degree of limitation causing more than minimal effect on [Plaintiff's] ability to work": back pain with sciatica, headaches, hypertension, hyperlipidemia, a leg lipoma, sleep apnea, metabolic syndrome, renal stones, and "abnormal uterine

bleeding." (*Id*. at PageID.70).

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir. 1985). At Step Two, a condition can be deemed "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Id.* at 90 (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The regulations, 20 C.F.R. §§ 404.1522(a) and 416.922(a), define a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28 1985 WL 56856, at *3 (1985) (same). "Basic work activities" include the physical functions "such as walking, standing, sitting;" the capacity for "seeing, hearing, and speaking;" and the psychological capacities pertaining to "[u]nderstanding, carrying out, and remembering simple instructions;" "[u]se of judgment;" "[r]esponding appropriately to supervision, co-workers and usual work situations;" and "[d]ealing with changes in a routine work setting. *Id.* Here, the ALJ acknowledged Plaintiff's physical limitations by limiting her to a limited range of light work, accompanied by postural and environmental limitations. (ECF No. 8-2, PageID.73).

And even assuming that headaches and back pain caused more than *de minimis* work-related limitations and ought to have been deemed "severe," the ALJ's finding that the headaches and back pain were non-severe does not provide a basis for remand.  Despite the low bar for qualification as a "severe" impairment, the omission of an impairment causing work-related limitations at Step Two is of "little consequence," provided that the ALJ considers "all impairments" in crafting the RFC. *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x. 801, 803, 2003 WL 21949797, * 1 (6th Cir.  2003); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (no reversible error where the ALJ took into account both the severe and non-severe impairments at the remaining steps of the analysis).

As to the condition of headaches, the ALJ noted that the headaches "were managed with prescribed medication as needed."  (ECF No. 8-2, PageID.70).  Plaintiff testified at the hearing that she obtained good results from prescribed medication.  (*Id*. at PageID.102-03).  A June 2019 "problem list" did not include headaches. (ECF No. 8-7 PageID.755).  Her medication list included Fioricet "as needed" for headaches.  (*Id*. at PageID.757).  She reported headaches on a sporadic basis for the remainder of the relevant period.

While Plaintiff alleged significant and ongoing back pain, the ALJ noted that imaging studies of the lumbar spine showed only mild degenerative

changes.   (ECF No. 8-2, PageID.74).   As noted above, treating and consultative records showing a normal gait and muscle strength support the conclusion that Plaintiff's exertional abilities exceeded the restriction to a limited range of light work set forth in the RFC.  (*Id*. at PageID.73), (ECF No. 8-7, PageID.500, 970).  Because Plaintiff's report of back pain is adequately addressed by the restriction to exertionally light work with only occasional stooping, kneeling, crouching, and crawling, as well as frequent balancing and bending and a preclusion on the use of ropes, ladders, or scaffolds, a remand on this basis is not warranted.  (ECF No. 8-2, PageID.73).

Plaintiff's related contention that the ALJ "erroneously declared" that the headaches did not meet the 12-month durational minimum for a severe or non-impairment is not well taken.[5]  (ECF No. 10, PageID.1225) citing (ECF No. 8-2, PageID.70).  This argument is based on the ALJ's statement that "[t]he records show signs of headaches, hypertension hyperlipidemia, lipoma in [Plaintiff's] legs, and sleep apnea.  However, the findings failed to support a minimal duration of 12 months <u>or</u> a degree of limitation causing more than a minimal effect on her ability to work."  (ECF No. 8-2, PageID.70) (underscore added).

---

[5] "Unless [the] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.  20 C.F.R. § 404.1509

While the ALJ could have been clearer about which of these conditions he found non-severe and which did not last 12 months, there is no reason to conclude that the ALJ mistakenly believed that the headaches did not last 12 months.  First, the ALJ added that Plaintiff's "headaches were managed with prescribed medication as needed," suggesting that she believed the condition was non-severe rather than a condition that was resolved within a 12-month period.  (*Id*.)  Second, the ALJ ends the above sentence with a citation to Exhibit 3F consisting of the treating records from June 2018 through July 2019 showing that she experienced headaches at least as early as March 2019, and as indicated by Plaintiff's testimony, continued until the time of the hearing.  (ECF No. 8-7, PageID.557).  Plaintiff testified that the (ongoing) headaches were manageable with medication. (ECF No. 8-2, PageID.102-103).  There is no basis to conclude that the ALJ excluded the condition from the severe impairments because she erroneously believed that the condition did not meet the 12-month durational requirement.

Finally, Plaintiff's claim that the ALJ was required to make explicit findings as to the "frequency, intensity, or duration" of the headaches appears to rely on *Jablonski v. Comm'r of Soc. Sec.*, 483 F. Supp. 3d 480 (E.D. Mich. 2020).[6]  (ECF No. 10, PageID.1227).  But *Jablonski* is distinguishable from

---

[6] Plaintiff's attorney incorrectly refers to *Jablonski* as a Sixth Circuit case. (ECF No. 10, PageID.1227).

the present case. First, the ALJ in *Jablonski* found that "headaches" were a severe impairment causing "significant" work-related limitation, whereas here the ALJ supportably concluded that the condition was non-severe. *Id.* at 483. Second, the claimant's headaches in *Jablonski* were attributable to a more serious neurological condition (requiring a shunt placement), in contrast to the present case where the headaches were not attributable to a more serious condition and were well managed with medication. *Id.*

Because the ALJ's finding that Plaintiff was not disabled is supported by the record and adequately explained, the administrative determination should remain undisturbed.

### H.  Conclusion

For these reasons, I recommend **DENYING** Plaintiff's motion for summary judgment (ECF No. 10), and **GRANTING** the Commissioner's motion (ECF No. 12).

### III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the

37

proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 22, 2022                    s/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge